OPINION
{¶ 1} Joseph Yelley appeals from a judgment of the Montgomery County Court of Common Pleas, which granted permanent custody of his daughter, Amber McKinley, to the Montgomery County Children's Services Board ("MCCSB").
 {¶ 2} The MCCSB filed a dependency complaint regarding Amber in 1998, when she was living with her paternal grandmother. Shortly thereafter, she was placed in foster care. The MCCSB developed case plans for Yelley and for Amber's mother. Amber's mother, who had serious mental health problems, never pursued the completion of her case plan. Yelley, however, did work on all of the elements of his case plan, including regular visitation with Amber, completion of anger management classes, working on parenting skills, and finding more appropriate housing.
 {¶ 3} Despite progress in these areas, the MCCSB sought permanent custody of Amber because, in the view of its caseworkers and psychologist, Yelley remained unable to meet Amber's special needs. The trial court adopted the magistrate's decision granting permanent custody to the MCCSB in May 2002 and overruled Yelley's objections in December 2002.
 {¶ 4} Yelley raises one assignment of error on appeal.
 {¶ 5} "The trial court committed an error of law and abused its discretion by denying Mr. Yelley his essential, basic right to raise his daughter because its decision to terminate his parental rights was not in the best interests of the child and it failed to recognize that the minor child could be returned to the father/appellant within a reasonable period of time."
 {¶ 6} Yelley contends that the trial court erred in concluding that he was unable to care for Amber and that Amber's best interests would be served by granting permanent custody to the MCCSB.
 {¶ 7} The trial court's concerns about Yelley's ability to parent Amber were twofold. The concerns related to the shortcomings in Yelley's parenting and to Amber's special needs. There is no dispute that Yelley complied with his case plan and that he showed improvement in many of the areas of concern. However, the MCCSB psychologist testified that Yelley had the mental capacity of an eleven or twelve year old and that his reasoning and problem solving capabilities were limited accordingly. The testimony included several examples of poor judgment on Yelley's part on issues relating to Amber, which substantiated the psychologist's and caseworkers' concerns about his ability to parent her. For example, Yelley viewed his mother and sister as likely babysitters when he needed help with Amber despite the fact that these women had abused him as a child or had been alleged to have abused Amber in the past. He also slept much of the day due to depression, a lifestyle that would be incompatible with the very structured environment and close supervision required by Amber. Yelley also did not have any concern about using a mattress that he had retrieved from an alley for Amber's bedding. Further, he continued to display some difficulty with anger management. For these reasons, the trial court had a legitimate basis to consider the limitations in Yelley's parenting abilities.
 {¶ 8} The trial court also properly considered Amber's special needs, which go significantly beyond those of an average child. Amber has profound emotional and behavioral problems. At times, she has been so uncommunicative that her caregivers believed her to be deaf. Numerous family members and foster families were unable to provide the enormous effort and attention that her care requires. Amber can be extremely aggressive and out of control. At age six, she is not yet fully toilet trained and, for a time, she even ate her own feces. Amber needs to be supervised very closely and, according to her caseworkers and foster mother, she needs a great deal of structure in her life. She has made significant progress in her current foster home but is still very insecure and exhibits significant behavioral problems. Amber's foster mother is interested in adopting her.
 {¶ 9} R.C. 2151.414(B)(1)(d) provides that, when a child has been in the custody of the MCCSB for twelve or more months of a consecutive twenty-two month period, the trial court may grant permanent custody to the MCCSB if it finds that it is in the best interests of the child to do so. When the child has been in the MCCSB's custody for this extended period of time, the trial court does not need to determine whether the child can be placed with a parent within a reasonable period of time, as Yelley's argument suggests. Given the circumstances presented in this case, we can find no fault with the trial court's conclusion that Amber's best interests will be served by being placed in the MCCSB's permanent custody. We recognize that Yelley has shown a strong desire to parent Amber and that he has largely complied with the MCCSB's case plan, but the sad truth is that, despite these efforts, he is not in a position to meet Amber's needs. The evidence shows that Amber would be a challenge to the most patient and stable of parents. She needs to have not only extremely consistent and dedicated parenting, but she also needs to have no further obstacles put in the path toward a stable home environment. Despite his good intentions, the trial court reasonably found that Yelley was not able to provide such stability and that it was therefore in Amber's best interests to place her in the custody of the MCCSB.
 {¶ 10} The assignment of error is overruled.
 {¶ 11} The judgment of the trial court will be affirmed.
FAIN, P.J. and GRADY, J., concur.